UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EDWIN JEFFERS ET AL | CIVIL ACTION NO. 14-CV-188 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| BNSF RAILWAY CO. | BY CONSENT OF ALL PARTIES |

## MEMORANDUM RULING

This case comes before this Court by consent of the parties pursuant to 28 U.S.C. §636. Pending before the Court is BNSF Railway Company's (BNSF) Motion to Dismiss for Failure to State a Claim [Rec. Doc. 9], which is opposed by the plaintiffs. Based on the submissions and arguments of the parties, the Court's analysis of applicable law, and for the reasons set out herein, the motion is denied.

### *Background*

The plaintiffs are the owners/inhabitants of residences or businesses in Gray Lawn Subdivision, located north of some railroad tracks situated upon an elevated roadbed which runs through the area. They filed a Petition for Damages in the 15th Judicial District Court, Acadia Parish, Louisiana, which was removed. Jurisdiction is premised on 28 U.S.C. §1331 and 1332.  The plaintiffs allege that their homes and businesses sustained damage during heavy flooding from rainstorms on January 10-11, 2013.  An investigation was undertaken in which it was determined

that the unprecedented flooding was caused by an improperly maintained drainage culvert, estimated to be 80% obstructed, reducing the ability of the culvert to properly drain surface water and prevent flooding in the subdivision. The plaintiffs allege the obstructed culvert was owned by BNSF which had a duty to maintain the culvert, but did not. The plaintiffs seek money damages for repairs, expenses, replacement costs and other losses pursuant to provisions of La.Civ.Code arts. 2315 and 2317.1.

BNSF contends that the plaintiffs' claims are completely preempted by provisions of the Interstate Commerce Commission Termination Act of 1995 [ICCTA] and/or the Federal Railroad Safety Act [FRSA], and therefore, should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6). BNSF argues the plaintiffs "seem to allege that BNSF is liable for plaintiffs' flood damage due to BNSF's design, construction or maintenance of its railroad tracks through Crowley, Louisiana," and therefore, the claims inherently concern subject matters that are completely consumed and preempted by the ICCTA, FRSA, and the rules/regulations promulgated under those Acts.

### *Applicable Law and Discussion*

*The Rule 12(b)(6) Standard:*

Although federal preemption is an affirmative defense that a defendant must

plead and prove, if the complaint itself establishes the applicability of the defense, the issue may be properly the subject of a Rule 12(b)(6) motion. *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012), *Simmons v. Sabine River Authority Louisiana,* 732 F.3d 469, 473 (5th Cir. 2013). However, the normal rules of evaluating a Rule 12(b)(6) motion still apply. When considering such a motion, the court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

*The Applicable Substantive Law:*

    Federal preemption occurs when Congress expressly prohibits state

regulation and the intent of Congress to preempt state law is clear and explicit, or when Congress pervasively occupies a field of regulation and thereby implicitly leaves no room for state regulation, or when state law actually conflicts with federal law.  See *Friberg v. Kansas City Southern Railway Company*, 276 F.3d 439, 442 (5th Cir. 2001) (citing *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65(1990)).  The preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by...Federal Act unless that is the clear and manifest purpose of Congress.  Accordingly, [t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipolline v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2609, 2617, 120 L.3d.2d 407 (1992).  The critical question in any preemption analysis is whether Congress intended that federal regulation supersede state law. *Louisiana Public Service Commission v. Federal Communications Commission* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986).  "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687(2005)).  Thus, "the presumption

operates both to prevent and to limit preemption." *Franks Investment Company LLC v. Union Pacific Railroad Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (*en banc*).

The ICCTA provision relied upon by BNSF, 49 U.S.C. §10501, provides in part:

> (b) The jurisdiction of the Board[1] over--
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

BNSF contends that, since the drainage structure is a part of the railroad roadbed and structural device which holds up the trains and train tracks, the culvert is part of the railroad 'facility' that comes under the ICCTA preemption provision. BNSF asserts there are enough factual allegations on the face of the pleadings to place the controversy squarely within ICCTA express preemption.

---

[1] The "Board" is the Surface Transportation Board. 49 USCA 10102(1). The Board is an agency within the United States Department of Transportation with authority to regulate all aspects of railroad operations.

In *Franks,* an *en banc* panel of the Fifth Circuit adopted the reasoning expressed by the Eleventh Circuit and held for there to be express preemption under the ICCTA, the remedies sought must be "provided under laws *that have the effect of regulating rail transportation." Franks,* 593 F.3d at 410 (emphasis in original). In joining the Eleventh Circuit, the court pointed out a number of other circuits have explicitly adopted the following reasoning:

> Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, ...while permitting the continued application of laws having a more remote or incidental effect on rail transportation.

*Id.,* quoting *Florida E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331(11th Cir. 2001).[2]

The court identified the two types of state actions which are "categorically preempted" by the ICCTA because they would directly conflict with exclusive federal regulation of railroads and by their "very nature be 'unreasonable interference with interstate commerce.'" Specifically, "state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to

---

[2] The other circuits identified by the Fifth Circuit are the Fourth in *PCS Phosphate Co. v. Norfolk Southern Corp.* 559 F.3d 212, 218 (4th Cir. 2009)*;* the Sixth in *Adrian & Blissfield R.R.Co. v. Village of Blissfield,* 550 F.3d 533, 539 (6th Cir. 2008); and the Third in *N.Y. Susquehanna & Western Ry. Co. v. Jackson,* 500 F.3d 238,252, 254 (3d Cir. 2007)). *Franks,* 593 F.3d 410 FN. 2.

conduct some part of its operations or to proceed with activities the Board has authorized. . .[and] state or local regulation of matters directly regulated by the Board - such as the construction, operation, and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and services." *Franks,* 593 F.3d at 410-411(quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008)).

    The plaintiffs do not allege claims based on defective design and construction of the BNSF railroad or the railroad bed. The laws under which the plaintiff seek a remedy in money damages are the tort laws of Louisiana found in the Civil Code based on the failure of BNSF to properly maintain its culvert. The plaintiffs have not sought removal or reconstruction of the culvert, they have not sought injunctive relief, and they have not sought a court directive that BNSF take any other action relative to the culvert, the roadbed or the rail tracks. Consequently, since there is nothing about the plaintiff's remedy that has the effect of regulating rail transportation, the express preemption under the ICCTA does not apply.

    BNSF next argues that even if preemption is not applicable under provisions of the ICCTA, the claims of the plaintiffs are nevertheless preempted by the "sweeping express preemption clause" of the Federal Railroad Safety Act (FRSA)

at 49 U.S.C. §20101 et seq. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for "every area of railroad safety." 49 U.S.C. §20103(a). The FRSA preemption provision found at 49 U.S.C. §20106 provides:

> (a) National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
> (C) does not unreasonably burden interstate commerce.

Consistent with the preemption provision, BNSF notes that the Secretary of Transportation has long regulated the construction and maintenance of railroad tracks and roadbeds, including regulations directly aimed at ensuring proper drainage of track areas. A specific regulation addressing drainage issues is set out at §213.33 of the "Track Safety Standards" regulation:

> Each drainage or other water carrying facility under or immediately

adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned.

According to BNSF, since FRSA regulations "cover" the manner in which railroads design and construct their roadbeds and tracks, and specifically address drainage, a state action purporting to affect how a railroad's roadbed or track is designed, constructed and maintained or how drainage for the roadbed is to be designed, constructed or maintained is preempted.

BNSF acknowledges in a footnote that the FRSA was amended in 2007 to "clarify circumstances in which FRSA preemption does not extend to bar a state cause of action" but contends that the clarifications do not reach the issues presented in this case. This Court disagrees and concludes the allegations bring this claim within the scope of the savings clause of the FRSA, also at 49 U.S.C. §20106, which provides:

> (b) *Clarification regarding State law causes of action.*--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the

> Secretaries; or
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

Under this amendment, even though §213.33 may "cover" railroad safety since it pertains to maintenance of drainage areas along a railroad bed, a plaintiff may still bring a claim for property damage if a party has "failed to comply with the Federal standard of care established by the regulation." Although the plaintiffs do not specifically allege that BNSF failed to conform to the standard set forth in §213.33, one could infer that the regulation provides the standard of care under which the actions of BNSF are to be judged for negligence, i.e. the railroad shall maintain the drainage or other water carrying facility and keep it free of obstruction, "to accommodate expected water flow for the area concerned." Having drawn this inference, it should not be necessary to determine whether the regulation "covers" the plaintiffs' claims.

The Third Circuit analyzed the effect of the amendment in *Zimmerman v. Norfolk Southern Corp.*, 706 F.3d 170 (3d Cir. 2013). The court set forth a two-step analysis in which it first asked "whether the defendant allegedly violated either a federal standard of care or an internal rule that was created pursuant to a

-10-

federal regulation. If so, the plaintiff's claim avoids preemption. . .Otherwise we move to the second step and ask whether any federal regulation covers the plaintiff's claim." *Id.,* at 178 (citations omitted).

In the more recent decision of *MD Mall Associates, LLC v. CSX Transportation, Inc.*, 715 F.3d 479 (3d Cir. 2013), cert. denied, 2014 U.S. LEXIS 530 (January 13, 2014), the court considered the application of the amendment to the specific regulation at issue in this case, 49 C.F.R. §213.33. Applying the second step of the analysis, the court held that a state law claim for injunctive relief to eliminate storm water runoff from a concrete spillway that was constructed as part of the railroad drainage system was not preempted. In a footnote, the court drew the distinction between the types of claims that fall under the first step of the analysis and those that fall under the second:

> The universe of possible claims can be thought of as fitting within three categories: first, those, like the ones in *Zimmerman*, that depend upon the breach of a standard set by federal law (or adopted by a railroad from federal law) as the basis of liability and are thus not preempted; second, those that depend on state law as the basis for liability but which are preempted because there is an applicable FRSA regulation that entirely covers the plaintiff's claim; and, third, those that depend on state law and are not preempted because there is no such regulation. The first *Zimmerman* question seeks to discover which claims fall within the first category, and the second *Zimmerman* question brings to light the claims that fall within the latter two categories.

*MD Mall Associates LLC v. CSX Transportation,* 715 F.3d at 488, fn 7.

Applying the second part of the analysis, the *MD Mall* court found the claims asserted by the plaintiff were not preempted because the regulation did not cover the claims. Specifically, applying the presumption against preemption, the court would not "read the silence of §213.33 on a railroad's duties to its neighbors when addressing track drainage as an express abrogation of state storm water trespass law." *Id.,* at 491. Second, the court found the harm sought to be avoided by §213.33 (avoiding water pooling on the railroad track) was "wholly different than the harm alleged by MD Mall (storm water trespass)." *Id.* at 491-92.

This Court concludes the analysis espoused by the Third Circuit is persuasive, and under either step, the claims of the plaintiffs against BNSF are not preempted based on the factual allegations contained in the complaint. There is no indication in this regulation that the Louisiana Civil Code article pertaining to negligence claims should be preempted. The plaintiffs have not sought removal, redesign or reconstruction of the culvert or any other form of injunctive relief. They seek nothing which would affect the safety of rail transportation caused by water impacting the integrity of the rail system - the harm the regulation is geared toward. Rather, they seek monetary damages caused by the alleged failure of BNSF to do what federal regulations require it to do. Thus, under either analysis preemption is not applicable.

### *Conclusion*

Applying the requisite narrow view of preemption and its application, and finding no clear indication of the intent by Congress to preempt the types of negligence claims articulated by the plaintiffs, preemption is not applicable under either ICCTA or the FRSA. Therefore, the Motion to Dismiss is DENIED.

Signed at Lafayette, Louisiana this 1st day of May, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge